IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SIMON V. GRIEGO,

        **Plaintiff,**

vs.                                                                         No.  02cv1039 DJS

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

        **Defendant.**

**MEMORANDUM OPINION**

This matter is before the Court on Plaintiff's (Griego's) Motion to Reverse or Remand Administrative Agency Decision **[Doc. No. 14]**, filed May 2, 2003, and fully briefed on July 31, 2003.  The Commissioner of Social Security issued a final decision finding Griego had experienced medical improvement related to the ability to perform work, affirming the prior determination that Griego was no longer disabled effective September 1, 1998, and affirming the prior determination that Griego's supplemental security income benefits be terminated effective November  1, 1998.  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds the motion to reverse is not well taken and will be DENIED.

**I.  Factual and Procedural Background**

Griego, now forty-four years old, filed his first application for supplemental security income in November 1987, alleging disability since October 1987, due to pain from a broken left arm, broken pelvis, dislocated hip, broken left leg, and mental anguish.  Tr. 64-67.  This

application was denied on June 21, 1998.  Tr. 97.  Griego filed a second application in December 1988, alleging disability due to residual problems related to his broken left femur, hip, pelvis and left arm. Tr. 117-120.  On April 11, 1989, this application was denied.  Tr. 121.  Griego appealed this decision.  After an administrative hearing, the Administrative Law Judge (ALJ), on February 28, 1990, approved Griego for a closed period of disability, from November 1987 to August 4, 1989.  Griego also appealed this decision.  The Appeals Council remanded to allow the ALJ to complete a Psychiatric Review Technique Form (PRTF), consult with a vocational expert, and reevaluate the cessation issue.  Tr. 277.  On September 24, 1991, after another administrative hearing, the ALJ found Griego's impairments had not medically improved and his impairments met the affective disorder and substance abuse criteria of Listing 12.04.  Tr. 375.

On September 21, 1998, the Commissioner notified Griego she had determined his condition had improved and he was no longer eligible for benefits.[1]  Tr. 402-406.  Griego appealed this decision.  Tr. 407.  The Commissioner affirmed the decision.  Tr. 428-440.  Griego requested a hearing before an ALJ.  On October 5, 2000, after holding an administrative hearing, the ALJ entered her decision, finding Griego was not entitled to benefits.  Tr. 24-28.  Griego appealed the ALJ's decision to the Appeals Council.  Tr. 13-20.  The Appeals Council denied Griego's request for review.  Tr. 10-11.  Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes.  Griego seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

---

[1] After a claimant has been awarded disability benefits, the Commissioner is required to review the case periodically to determine whether there has been any medical improvement in the claimant's condition and whether that improvement affects the claimant's ability to work.  20 C.F.R. § 416.994(a).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989).  "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).  Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met.  *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

The Commissioner applies a seven-part sequential evaluation process to determine whether a claimant's disability continues.  *See* 20 C.F.R. § 416.994(b)(5)(i)-(vii).  This evaluation includes the following steps:

(i) Does beneficiary have an impairment or combination of impairments which meets or equals the severity of an impairment listed in the Listing of Impairment?

(ii)  Has there been medical improvement? [2]

(iii) If so, is it related to the claimant's ability to do work, i.e., has there been an increase in the residual functional capacity (RFC) based on the impairment(s) present at the time of the most recent favorable medical determination?

(iv) If there has been no medical improvement, or if such improvement is not related to claimant's ability to work, do any of the exceptions to medical improvement apply?  (see 20 C.F.R. 416.994(b)(3) &(4) for list of exceptions.)

(v) If the medical improvement is related to ability to do work, or if one of the exceptions found in 416.994(b)(3) & (4) apply, then are all the current impairments in combination severe?

(vi) Considering all current impairments, does beneficiary have sufficient RFC to do past relevant work?

---

[2] Medical improvement under the regulations is defined as:
Any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled.  A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s).  20 C.F.R. § 416.994(b)(1)(i).

      (vii)    In addition, considering age, education, and other past work experience, does beneficiary have sufficient RFC to perform other work?

20 C.F.R. § 416.994(b)(5)(i)-(vii).  The Commissioner bears the burden of showing medical improvement by establishing the claimant's medical condition has improved, the improvement is related to the claimant's ability to work, and the claimant is currently able to engage in substantial gainful activity.  *Glenn v. Shalala*, 21 F.3d 983, 987 (10th Cir. 1994).  In deciding whether to terminate benefits, a claimant's "current impairments not just impairments present at the time of the most recent favorable determination" are considered together.  *See* 20 C.F.R. § 416.994(b)(1)(v).

    Griego was originally found to meet Listing 12.04 (Affective Disorders).  Tr.  369-380.  The ALJ reviewed the medical evidence and concluded the evidence demonstrated Griego's condition had significantly improved as of September 1, 1998.  Tr. 26.  The ALJ assessed Griego's current residual functional capacity (RFC) and determined Griego regained the ability to frequently lift 10 pounds, sit for six hours at a time, perform pushing and pulling with his lower extremities, stand one hour at a time, walk one block at a time and perform simple, repetitive one and two step tasks at a competitive rate.  *Id.*

    In support of his motion to reverse and remand for a rehearing, Griego advances the following arguments: (1) the ALJ's decision is not supported by substantial evidence; (2) the ALJ erred in relying on his "drug seeking behavior" in making her credibility assessment; and (3) the ALJ's pain analysis is contrary to law as set forth in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987).

**A.  Credibility Determination**

Credibility determinations are peculiarly the province of the finder of fact and will not be upset when supported by substantial evidence. *Diaz v. Secretary of Health and Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988). However, the ALJ's credibility determination does not require a formalistic factor-by-factor recitation of the evidence. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ need only set forth the specific evidence she relies on in evaluating claimant's credibility. *Id.* The ALJ may also consider her personal observations of the claimant in her overall evaluation of the claimant's credibility. *Id.*

In evaluating a claimant's credibility regarding pain, the ALJ must consider the level of medication the claimant uses and its effectiveness, the claimant's attempts to obtain relief, the frequency of medical contacts, the claimant's daily activities, subjective measures of the claimant's credibility, and the consistency or compatibility of nonmedical testimony with objective medical evidence. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). The inability to work pain-free is not sufficient reason to find a claimant disabled. *See Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988).

Griego contends the ALJ's reliance on his "drug seeking behavior" in making her credibility determination is contrary to law. According to Griego, the ALJ's credibility determination was based on "references by [his] doctors of his drug seeking behavior." Pl.'s Mem. in Supp. of Mot. to Reverse at 18. Griego also claims "the ALJ incorrectly determined

there was no documented medical evidence to support his complaints of low back and leg pain."

*Id.* The record does not support Griego's allegations. In her decision, the ALJ found:

> **The claimant's testimony and reports of symptoms and functional restrictions was (sic) not supported by the evidence overall in the disabling degree alleged, and therefore lacked credibility**. The record reflects that the claimant has been maintained on high doses of narcotic medications, including Percocet, Darvocet, Oxycodone, and Roxicet over several years for his persistent complaints of back, leg and hip pain. He was diagnosed as having severe left hip degenerative disease and underwent a total left hip arthroplasty in May 1997. At the time he was placed on narcotic medications, he was experiencing severe hip pain. However, following his hip surgery the claimant ceased to complain of hip pain and began to complain of back pain. His doctor continued his narcotics. He has subsequently visited the emergency room and the hospital clinic with persisting complaints of severe back pain, and has received large doses of narcotics (Exhibits B32, B33, B46, and B48). All of this is notwithstanding the facts that he has a long history of drug and alcohol abuse, and his clinical examinations have not supported his pain complaints, his x-rays have been normal, and the results of his lumbar MRI indicate only very minimal disc bulging which does not impinge on the thecal sac or the nerve roots.
>
> These results do not support the claimant's complaints of back pain and leg symptoms radiating from his back. Although the claimant testified to muscle spasms which cause him to be bedridden three or four times a week, I note that no clinical examination has found any muscle spasm or triggerpoints. While the claimant wore a wrist brace to his consultative evaluation (Exhibit B29), and he testified that he uses a cane 90 percent of the time, no doctor has prescribed a wrist brace or a cane. Although he testified that he cannot lift even a gallon of milk, he inconsistently report (sic) to the consultative examiner that he can carry 40 pounds (Exhibit B29). While his doctors do not explain why the claimant has required heavy narcotic medication on a regular and sustained basis for the past several years in spite of the lack of clinical or diagnostic findings supporting his complaints of back pain radiating into his legs, he has more recently been evaluated by an anesthesiologist, who has recommended that he be weaned off the narcotics and maintained on Methadone, a narcotic substitute frequently prescribed for addicts (Exhibit B48).
>
> Even so, his treating doctor continues to prescribe Darvocet in addition to the claimant's Methadone. The claimant states that Percocet and Darvocet, powerful narcotics, are the only medications which relieve his pain. He has been obtaining prescribed narcotics from more than one source (Exhibit B46 at 11). He has displayed drug seeking behavior while seeking narcotics in the emergency room, displaying great anger when refused the drugs (Exhibit B46 at 14). He has been required to enter into contracts with his doctors not to abuse his drugs (Exhibit 46 and 48). He has requested narcotics from the clinic, stating that he has been having trouble getting in to see his primary physician, when there is no indication that he has any such difficulty, and the evidence suggest that his primary physician has indicated that he should be weaned off narcotics. In fact, the doctor's notes indicate that the claimant's primary reason for appearing at the clinic was to obtain pain

> medication, not treatment or evaluation (Exhibit 33). The evidence of record overall indicated that the claimant's behavior has been driven by drug seeking rather than painful symptoms.

Tr. 25-26 (emphasis added). The ALJ also found "his diagnostic tests reveal that he has only a very slight lumbosacral disc abnormality" and "he has had only a slight radicular component to his back pain." Tr. 25. These statements by the ALJ indicate that she acknowledged Griego had a pain producing impairment but "his testimony and reports of symptoms and functional restrictions [were] not supported by the evidence overall in the disabling degree alleged, and therefore lacked credibility." *Id.* (emphasis added). Substantial evidence supports this finding. *See, e.g.*, Tr. 653 (4/4/00 University Hospital visit– complaints of back pain; physician noted "mild back pain with palpation, muscle strength and sensory intact in left extremity); Tr. 632 (3/30/00 University Hospital report– attending physician noted "chronic pain, chronic narcotic use; Wants extra narcotics to tide him over. I said I won't give narcotics for chronic pain (he refused alternative), I said only one Dr. can Rx narcotics if indicated and he used too many within time span. I said I'll Rx no narcotics and he got up and left angry."); Tr. 656 (2/2/00 visit to University Hospital with complaints of lower back pain and left lower extremity pain; physician noted "mild pain with palpation" and underlined "mild" twice to make his point; noted "plan not to increase previous levels of medications" and underlined "not" twice; Tr. 633 (1/4/00 University Hospital visit– complaints of back pain; no spinal tenderness, slightly tender, low lumbar spine with no radiation; given Percocet (narcotic) to last until follow-up); Tr. 635 (12/23/99 University Hospital visit– complaints of back pain; no trigger points, essentially negative physical examination; 1998 MRI essentially normal; referred to pain clinic, no more Percocet until established with PCP (primary care physician); Tr. 645 (8/13/99 University Hospital Emergency Room visit– "nl (normal) gait,

full sensation, <u>no radiation with straight leg raise,</u> able to walk on toes and heels; diagnosis-> low back pain; Pt has <u>inconsistent hx</u> with low back pain and radiation up the back to arms. Also shows great anger.); Tr. 642 (3/23/99 University Hospital Outpatient Clinical Department visit– complains that Family Practice physician refused to give him methadone; given 9 day supply; attending physician noted "getting drugs from other sources!!"); Tr. 636 (3/22/99 visit to University Hospital– "gen (generally) well, <u>mild</u> midline lumbosacral tenderness"); Tr. 637 (3/17/99 visit to University Hospital's walk in – complaints of back pain, "alert, NAD (no apparent distress), angry because he is not given adeq[uate] pain meds, explained rationale for reluctance to refill narcs (narcotics), needs to seek alternative methods and get all narcs. from PCP . . . Don't come to Walk In."); Tr. 638 (2/19/99 – Family Nurse Practitioner unwilling to prescribe narcotics and referred to attending physician, refused to see PCP); Tr. 564 (1/12/99 visit to University Hospital– note from attending physician indicates "<u>mild</u> discomfort, <u>pain doesn't radiate</u>" and "Fairly good control of pain on current regimen of Methadone . . . recommend reassessment by PT (physical therapy) to increase ROM (range of motion) & strength now that pain under better control); Tr. 675 (12/15/98 visit to University Hospital– complaints of back pain with radiation to left leg; attending physician noted a <u>negative straight leg raise</u> (indicates no pain radiation down left leg) and <u>no muscles spasms</u>, marked tenderness with palpation lower back); Tr. 530 (8/5/98 orthopedic examination indicated no trigger points or muscle spasms); Tr. 534 (8/98 visit to emergency room requesting narcotics, ER physician questioned degree of pain allegations and noted "MRI– <u>minimal bulge</u> @ L5-S1" and "very early osteoarthrosis with sclerosis L4-S1"); Tr. 536 (4/22/98 visit to emergency room– became angry and left without being examined when ER physician refused to prescribe narcotics for pain); Tr. 538 (4/22/98 MRI

indicates "Lumbar spine is in <u>normal alignment</u>.  No evidence of fracture or dislocation.  Disc height and disc signal are preserved throughout.  There is a very <u>minimal</u> bulge at L5-S1 which does not deform the thecal sac or cause nerve root impingement."); Tr. 573 (2/24/98 report from Dr. Vance with University Hospital Orthopaedics & Rehabilitation– "The patient's primary interest today was to obtain pain medication.  Orthopedics will not give out pain medications (narcotics) in the future."); Tr. 578 (8/11/97 University Hospital Family Health Clinic– complaining of severe pain and reports his previous physician found a collapsed disc on x-rays; attending physician noted, "I find no evidence in his medical record of a collapsed disc and he doesn't describe any symptoms of radiculopathy."); Tr. 580 (7/22/97 reports indicates "<u>slight low back tenderness over spine</u>" on examination); Tr. 594 (7/18/97 x-rays of the lumbar spine indicate "lumbar spine alignment, vertebral body heights and disc spaces are all normal.  No fracture or degenerative changes are identified.  SI joints within normal limits.").

   Although the ALJ's primary reason for rejecting Griego's complaints was that they were not fully credible **to the degree alleged**, Griego's "drug seeking" behavior was only was one of many factors the ALJ  considered in her credibility determination.  *See* Tr. 25 (his clinical examinations have not supported his pain complaints); *id*. (his x-rays have been normal); *Id.* (results of his lumbar MRI indicate only very minimal disc bulging which does not impinge on the thecal sac or the nerve roots); *id.* (no clinical examination has found any muscle spasms or trigger points); *id.* (while he testified he uses a cane 90 percent of the time, no doctor has prescribed this); *id.* (he testified he could not lift even a gallon of mile, yet inconsistently reported to the consultative examiner that he can carry 40 pounds); Tr. 27 (he has not sought treatment or evaluation for any underlying mental problem); *id*. (he had not required any psychotropic

medications).  As required by Tenth Circuit law, the ALJ affirmatively linked her credibility findings to substantial evidence.  The Court will not upset an ALJ's credibility determination where, as here, it is supported by substantial evidence.  *Kepler*, 68 F.3d at 391.

### B.  Pain Analysis Pursuant to *Luna v. Bowen*

In evaluating a claim of disabling pain, the ALJ must consider (1) whether there is objective medical evidence of a pain producing impairment, (2) whether there is a loose nexus between this objective evidence and the pain, and (3) whether, in light of the evidence, both objective and subjective, the pain is in fact disabling.  *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994)(citing *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987)).  "'To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment.'"  *Brown v. Bowen*, 801 F.2d 361, 362-63 (10th Cir. 1986)(quoting *Dumas v. Schweker,* 712 F.2d 11545, 1552 (2d Cir. 1983)).  Moreover, "a claimant's subjective complaint of pain is by itself insufficient to establish disability."  *See Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990).

Griego contends the ALJ did not do a proper pain analysis as set forth in *Luna*.  The Court disagrees.  The ALJ acknowledged Griego's injuries as a result of a 1987 motor vehicle accident.  The ALJ noted, "The record reflects that the claimant was involved in a motor vehicle accident in 1988 or 1989 when driving while intoxicated, and sustained fractures of his pelvis, femur, wrist and forearm."  Tr. 27.  The ALJ also correctly pointed that although there was no evidence Griego had sustained a back injury in the accident, nonetheless, his complaints "have centered around chronic, severe back pain, with pain radiating into his legs."  *Id.*   Noting that Griego complained of "debilitating painful symptoms," the ALJ then set forth the objective

medical evidence that did not support Griego's allegations of pain "in the disabling degree alleged." *Id.*, Tr. 25. The ALJ found:

> However, his diagnostic tests reveal that he has only a very slight lumbosacral disc abnormality, and no nerve root or thecal sac impingment to explain his lower extremity pain. Moreover, his clinical examinations have found that he has had no muscle spasms or trigger points, his capacity for forward flexion to 90 degrees is normal, he has given inconsistent reports of back pain and radiation, his lower extremity neurological condition is normal, and he has had only a slight radicular component to his back pain (Exhibits B29, B46, and B48).

*Id.* The record supports these findings. Thus, the ALJ acknowledged that Griego had a pain producing impairment and, in determining whether his pain was disabling, she considered all of the objective evidence to determine whether Griego's allegations of pain where as debilitating as he alleged. Having performed this analysis, the ALJ found Griego's pain was not disabling. Substantial evidence supports this finding (see evidence set forth on pages 8-10). Accordingly, the Court finds the ALJ's analysis comports with the standard set forth in *Luna*.

## Conclusion

The Court's review of the ALJ's decision, the record, and the applicable law indicates the ALJ's decision adheres to applicable legal standards and is supported by substantial evidence. Accordingly, the ALJ's decision is affirmed.

A judgment in accordance with this Memorandum Opinion will be entered.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**